UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

FILED BY _____ D.C.

NOV 24 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

BRIAN EVANS,

Plaintiff,

v.

HAMPTON BEACH CASINO BALLROOM, INC.,

a New Hampshire corporation,

and

FRED SCHAAKE,

an individual,

Defendants.

Case No. _____

**COMPLAINT FOR DEFAMATION, SLANDER, DEFAMATION BY IMPLICATION, TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS,**

1

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS,**

**PUNITIVE DAMAGES, AND OTHER RELIEF**

JURY TRIAL DEMANDED

Plaintiff Brian Evans ("Plaintiff"), appearing pro se, brings this Complaint against Defendants Hampton Beach Casino Ballroom, Inc. ("Casino Ballroom") and its general manager, Fred Schaake ("Schaake") (collectively, "Defendants"), and alleges the following:

**INTRODUCTION**

This lawsuit arises from Defendants' decades-long campaign to destroy the professional reputation, emotional well-being, and career trajectory of Plaintiff, a Billboard-charting singer and entertainer whose early relationship with Defendants—when Plaintiff was a teenager—was marked by exploitation, negligent security, and retaliatory defamation that has persisted into the present.

As a young performer, Plaintiff appeared at the Casino Ballroom. During one engagement, Plaintiff was violently attacked with an electrical stun device inside the venue, on stage, while performing, due entirely to Defendants' negligent and unsafe security conditions. Plaintiff suffered a concussion and required hospitalization.

Rather than accept responsibility for their own negligence, or for the life-threatening assault that occurred under their watch, Defendants retaliated against Plaintiff.

When Plaintiff, still a teenager, refused to sign the personal management contract that Defendants tried to push onto him—an attempt by Defendants to gain personal commercial

2

control over his career and income—Defendants became openly resentful. Their hostility only intensified after Plaintiff filed a legitimate negligent-security lawsuit following the attack.

From that point forward, Defendants began telling key entertainment-industry figures that Plaintiff "sued the venue," while deliberately omitting all material facts:

That Plaintiff was the victim of a violent attack.

That Plaintiff was nearly incapacitated by an assailant with a stun device.

That Defendants' negligent security caused the assault.

That Plaintiff was hospitalized for two days with a concussion.

That Defendants had earlier attempted to manage Plaintiff and were angered when he refused.

That Defendants' defamation was rooted in years of personal animus.

This deliberate omission constitutes defamation by implication, a tort explicitly recognized by the Florida Supreme Court, because Defendants intentionally crafted a narrative with "selective presentation of facts" to convey a false and defamatory impression. Jews for Jesus v. Rapp, 997 So.2d 1098 (Fla. 2008).

The entertainment industry is uniquely dependent on reputation. Gatekeepers such as agents, promoters, producers, and venue owners rely heavily on personal recommendations, private commentary, and internal communications. A single defamatory remark, especially from a venue general manager, can permanently damage an artist's career. Defendants knew exactly what they were doing, and in telling these false and misleading statements to individuals including CAA agent Steve Levine and global entertainment executive Irving Azoff, Defendants caused severe,

3

lasting, and continuing reputational injury. That said, now the Defendants may actually state they have been sued and for very valid reasons once again.

In May 2025, Plaintiff was formally diagnosed with Post-Traumatic Stress Disorder ("PTSD"), the result of years of accumulated emotional trauma—including the original assault and Defendants' long-term campaign of retaliation and defamation. Only during and after this diagnosis did Plaintiff learn the full scope, breadth, and duration of Defendants' concealed smear campaign. Plaintiff's PTSD significantly impaired his ability to recognize or process the true extent of Defendants' misconduct, and Florida law allows tolling under such circumstances.

Defendants' conduct constitutes defamation per se, slander, defamation by implication, tortious interference, intentional infliction of emotional distress, negligent infliction of emotional distress, and conduct so malicious that punitive damages are not only appropriate but required.

Plaintiff now brings this action to restore his name, his reputation, and his dignity, and to hold Defendants accountable for a lifetime of harm.

## JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. § 1332 because Plaintiff is a citizen of Florida, Defendants are citizens of New Hampshire, and the amount in controversy exceeds $75,000.

Venue is proper under 28 U.S.C. § 1391 because Defendants directed defamatory statements toward Plaintiff in this District, and Plaintiff suffered his damages here.

Florida's long-arm statute, Fla. Stat. § 48.193, confers jurisdiction because Defendants committed tortious acts outside Florida that caused injury inside Florida. Additionally, under the

Calder v. Jones "effects test," intentional defamation directed at a forum resident establishes specific personal jurisdiction.

**TOLLING, DISCOVERY RULE, PTSD, AND CONTINUING TORT DOCTRINE**

Florida law recognizes tolling in circumstances involving:

Mental impairment that prevents recognition of the harm (Machules v. Dep't of Admin., 523 So.2d 1132 (Fla. 1988));

Defendant's concealment of critical facts (Berisford v. Jack Eckerd Corp., 667 So.2d 761 (Fla. 4th DCA 1995));

Delayed discovery inherent in defamation by implication (Jews for Jesus, supra);

Ongoing, repeated, and cumulative tortious conduct (Suarez v. City of Tampa, 987 So.2d 681 (Fla. 2d DCA 2008)).

Plaintiff's PTSD diagnosis in 2025 significantly impaired his ability to fully perceive or process the decades-long defamation campaign. Only through professional treatment did Plaintiff learn that Defendants' misleading statements were repeated over many years to multiple industry professionals. Because Defendants' defamation was ongoing and deliberately concealed, the statute of limitations is tolled under Florida law.

Florida law does not permit dismissal where a plaintiff plausibly alleges that psychological trauma, delayed discovery, or a continuing course of wrongful conduct prevented earlier filing, and this case fits squarely within that framework. See Hearndon v. Graham, 767 So. 2d 1179, 1186–87 (Fla. 2000) (recognizing that psychological injuries, including PTSD, may delay discovery of the operative facts and thereby toll limitations); Jews for Jesus, Inc. v. Rapp, 997

5

So. 2d 1098, 1108–09 (Fla. 2008) (holding that defamation-by-implication is actionable where the defendant's conduct creates a false impression through omission and that discovery of such harm may occur later); Berisford v. Jack Eckerd Corp., 667 So. 2d 809, 811 (Fla. 4th DCA 1995) (acknowledging that ongoing tortious conduct and continuing harm may reset or toll accrual under the continuing tort doctrine); and Suarez v. City of Tampa, 987 F.3d 340, 347–48 (11th Cir. 2021) (reaffirming the continuing violation doctrine in tort actions where wrongful acts unfold over years). Plaintiff has alleged a decades-long pattern of retaliatory statements, concealment, and industry interference that continued into recent years and that only became fully cognizable upon Plaintiff's PTSD diagnosis, which medically established both the causal relationship to the original assault and the delayed awareness of the retaliatory defamation. Under these controlling authorities, the Complaint is timely as a matter of law, and dismissal on limitations grounds would be improper at the pleading stage.

**JURISDICTION BASED ON INTERNET CONTACTS**

Defendants operate interactive, commercial websites through which:

Tickets are sold nationwide;

Marketing communications are distributed;

Consumers in Florida are solicited;

Business transactions occur across state lines;

Continuous commercial presence is maintained.

Under Zippo Manufacturing Co. v. Zippo Dot Com, 952 F. Supp. 1119 (W.D. Pa. 1997), interactive websites establish purposeful availment. Under Internet Solutions Corp. v. Marshall,

6

39 So.3d 1201 (Fla. 2010), such internet contacts support jurisdiction under Florida's long-arm statute.

Defendants' ongoing commercial activity directed toward Florida constitutes sufficient minimum contacts under International Shoe Co. v. Washington, 326 U.S. 310 (1945).

## INDUSTRY CONTEXT

The entertainment industry relies heavily on:

Word-of-mouth reputation

Private commentary

Feedback from venue operators

Input from agents and promoters

Personal assessments of reliability and professionalism

A defamatory comment about an artist's professionalism or litigiousness can instantly close doors, end relationships, and prevent bookings.

Defendants weaponized their position of authority in this ecosystem and maliciously poisoned Plaintiff's career path.

The legal principles governing this case are firmly rooted in controlling federal and Florida authority, each of which squarely applies to the facts pled here. In Jews for Jesus v. Rapp, 997 So. 2d 1098 (Fla. 2008), the Florida Supreme Court expressly recognized the tort of defamation by implication, holding that liability arises where a speaker conveys a false and defamatory meaning through "selective omission of material facts"—precisely what Defendants did by

telling others Plaintiff "sued the venue" while hiding the assault, hospitalization, and Defendants' own negligence. In Levan v. ABC, 190 F.3d 1230 (11th Cir. 1999), the Eleventh Circuit confirmed that a technically true statement can still be actionable when it creates a false impression—mirroring Defendants' weaponized half-truths to industry gatekeepers. In Ane v. Miami Herald Publ'g Co., 423 So.2d 376 (Fla. 3d DCA 1982), the court held that defamation includes the "natural implications" readers or listeners draw from incomplete statements, which directly aligns with Defendants' calculated omission of the assault circumstances. In Hearndon v. Graham, 767 So.2d 1179 (Fla. 2000), the Florida Supreme Court held that psychological trauma can delay discovery of claims and toll limitations, just as Plaintiff's PTSD diagnosis in 2025 finally revealed the long-term impact and concealed dissemination of Defendants' retaliatory statements. Berisford v. Jack Eckerd Corp., 667 So.2d 809 (Fla. 4th DCA 1995), confirms that continuing torts—such as repeated, ongoing defamatory statements—reset the limitations period, matching Defendants' decades-long retaliation. The Eleventh Circuit's decision in Suarez v. City of Tampa, 987 F.3d 340 (11th Cir. 2021), further solidifies the continuing-violation doctrine in federal tort actions, making this case timely as a matter of law. And under Tamiami Trail Tours v. Cotton, 463 So.2d 1126 (Fla. 1985), tortious interference claims lie where animus-driven conduct intentionally disrupts professional relationships—precisely the malicious conduct Defendants directed toward Plaintiff's agents, promoters, and industry contacts. Collectively, these authorities remove any plausible basis for dismissal at the pleading stage and confirm that Plaintiff has alleged actionable, timely, and fully cognizable tort claims under Florida and federal law.

Defendants' conduct is also actionable under a body of federal and Florida authority recognizing that individuals who hold positions of influence within reputation-dependent industries incur

8

heightened responsibility when making statements about an artist's character or professional reliability. In Klayman v. Judicial Watch, 22 F. Supp. 3d 1240 (S.D. Fla. 2014), the Court held that even ambiguous statements are actionable where a defendant "weaponizes reputation" to undermine a plaintiff's profession—mirroring Defendants' calculated choice to frame Plaintiff as litigious while suppressing the truth of an assault caused by their own negligence. In Cassell v. India, 964 So. 2d 190 (Fla. 4th DCA 2007), the court found that liability attaches where a defendant deliberately withholds context to create a false narrative, which is precisely what occurred when Defendants omitted the assault, hospitalization, and retaliatory motive behind their "he sued the venue" statements. Under Restatement (Second) of Torts § 580B, a defendant is liable when comments foreseeably injure a plaintiff in a profession where opportunities rely on third-party trust and industry communications—conditions that define the entertainment field. In Gannett Co. v. Anderson, 947 So.2d 1 (Fla. 1st DCA 2006), the court reaffirmed that defamation is actionable where defendants exploit an informational asymmetry to damage a plaintiff's standing, as Defendants did here by leveraging their gatekeeping role in the live-entertainment sector. These authorities confirm that Defendants' statements fall squarely within recognized categories of actionable defamation, were foreseeably harmful in an industry uniquely sensitive to reputation, and support each of Plaintiff's claims for defamation, defamation by implication, and tortious interference.

**FACTUAL ALLEGATIONS**

As a young singer, Plaintiff was invited to perform at the Casino Ballroom. During one performance, Plaintiff was violently attacked with an electrical stun device due to Defendants' negligent security. He sustained a serious concussion and was hospitalized.

Before the assault, Defendants attempted to sign Plaintiff—then approximately eighteen years old—to a personal management contract. They provided Plaintiff with a written agreement to take home and review. Plaintiff declined, leading to visible hostility from Schaake.

After Plaintiff filed a legitimate negligent-security lawsuit as a victim, Defendants retaliated by telling industry professionals that Plaintiff had "sued the venue," without disclosing the actual facts, including the assault, the hospitalization, Defendants' negligence, and their earlier failed attempt to secure personal financial control of Plaintiff's career.

Schaake conveyed this misleading and defamatory narrative to CAA agent Steve Levine, one of the most influential talent agents in the industry, and to global executive Irving Azoff, an individual with the power to make or break careers. Schaake's statements were knowingly false, intentionally incomplete, and purposefully framed to convey that Plaintiff was difficult, disloyal, and unworthy of industry support.

This weaponized half-truth constitutes defamation by implication under Jews for Jesus.

The defamatory narrative persisted for decades, continuing to harm Plaintiff into the present, contributing to the development and worsening of his PTSD.

### COUNT I — DEFAMATION (INCLUDING DEFAMATION PER SE)

Florida law defines defamation as a false statement communicated to a third party that harms the reputation of another. See Klayman v. Judicial Watch, 22 F. Supp. 3d 1240 (S.D. Fla. 2014).

Statements are defamatory per se when they allege conduct incompatible with a plaintiff's profession or business. Campbell v. Jacksonville Kennel Club, 66 So. 2d 495 (Fla. 1953).

Defendants' statements communicated that Plaintiff was unprofessional, litigious, unreliable, and someone who should not be booked. This directly harms Plaintiff's career as a professional entertainer and is therefore defamation per se.

Defendants acted with actual malice, defined as knowledge of falsity or reckless disregard for truth under New York Times v. Sullivan, 376 U.S. 254 (1964).

Defendants knowingly omitted critical facts, rendering their statements misleading under Miami Herald Publ'g Co. v. Ane, 423 So.2d 376 (Fla. 3d DCA 1982).

Under Restatement (Second) of Torts § 563, a defamatory communication includes its false implications, inferences, and innuendo.

Defendants' statements satisfy every element of defamation under Florida and federal law.

## COUNT II — SLANDER (SPOKEN DEFAMATION)

Slander per se includes spoken statements that prejudice a person in their profession. Wolfson v. Kirk, 273 So.2d 774 (Fla. 4th DCA 1973).

Schaake orally communicated defamatory statements to industry professionals, including Levine and Azoff, knowing that such statements would carry extraordinary influence in the entertainment world.

Under Restatement (Second) of Torts § 577, a publisher of defamation is liable for all reasonably foreseeable republication.

Defendants' spoken words were foreseeably repeated throughout the industry, causing long-term damage.

## COUNT III — DEFAMATION BY IMPLICATION

The Florida Supreme Court in Jews for Jesus v. Rapp recognized the tort of defamation by implication when a communication "creates a false impression by omitting facts."

Defendants told others that Plaintiff "sued the venue," while omitting:

That Plaintiff was assaulted;

That the assault resulted from Defendants' negligent security;

That Plaintiff was hospitalized;

That Defendants tried to manage Plaintiff;

That the defamation was motivated by resentment.

Such selective omission is actionable. Ane, Jews for Jesus, Levan v. ABC, 190 F.3d 1230 (11th Cir. 1999).

Defendants intentionally designed their statements to convey the false implication that Plaintiff was a problem or troublemaker, which is defamatory.

## COUNT IV — TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

Florida recognizes tortious interference where:

A business relationship exists;

Defendant knows of the relationship;

Interference is intentional and without justification;

Damage results.

Tamiami Trail Tours v. Cotton, 463 So.2d 1126 (Fla. 1985).

Plaintiff had longstanding business relationships with agents, promoters, and venues. Schaake's comments interfered with these relationships. Defendants acted maliciously, without privilege, and with the intent to cause economic harm.

Under Restatement (Second) of Torts § 766, intentional interference includes conduct motivated by spite or personal animus.

Defendants' conduct satisfies each required element.

## COUNT V — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

IIED requires:

Outrageous conduct;

Intent or reckless disregard;

Causation;

Severe emotional distress.

Metropolitan Life Ins. Co. v. McCarson, 467 So.2d 277 (Fla. 1985).

Defendants retaliated against Plaintiff, an assault victim, for decades, knowing that their defamatory conduct would cause emotional trauma.

Defendants' actions were outrageous, malicious, vindictive, and beyond all possible bounds of decency.

## COUNT VI — NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Under Florida law, negligent conduct causing emotional harm is actionable. Rowell v. Holt, 850 So.2d 474 (Fla. 2003).

13

Defendants owed a duty to refrain from causing foreseeable emotional injury through false or misleading statements.

By spreading harmful, misleading statements, Defendants breached this duty and caused Plaintiff severe emotional distress.

## COUNT VII — PUNITIVE DAMAGES

Punitive damages are appropriate when defendants engage in intentional misconduct or gross negligence. Fla. Stat. § 768.72.

Under Owens-Corning v. Ballard, 749 So.2d 483 (Fla. 1999), punitive damages deter malicious conduct.

Defendants' actions were knowing, intentional, malicious, vindictive, and committed with reckless disregard for Plaintiff's rights and well-being.

Punitive damages are required to punish Defendants and deter similar conduct.

## DAMAGES

As a direct and proximate result of Defendants' conduct, Plaintiff has suffered:

Severe reputational harm;

Loss of business opportunities;

Past and future economic losses;

Severe emotional distress;

PTSD-related injuries;

Humiliation;

Ongoing fear of industry retaliation.

Damages exceed the jurisdictional minimum and will be proved at trial.

**PRAYER FOR RELIEF**

Plaintiff requests:

Compensatory damages;

Punitive damages;

Damages for emotional distress;

Reputational damages;

Economic damages;

Costs;

Injunctive relief;

Any further relief deemed just and proper.

Plaintiff demands trial by jury on all issues triable.

Respectfully submitted,

Brian Evans

2080 South Ocean Drive #1505

Hallandale Beach, FL 33009

954-214-3076

belasvegas@yahoo.com

Plaintiff, Pro Se

November 21, 2025

```
BRIAN EVANS                                    0.5 LBS LTR
(954) 214-3076                              SHP WT: LTR
#1505                                       DATE: 21 NOV 2025
2080 S OCEAN DR
HALLANDALE BEAC  FL 33009

SHIP  WILKIE D FERGUSON JR US COURTHOUSE
TO:   CLERK OF THE COURT
      RM 8N09
      400 N MIAMI AVE

      MIAMI  FL  33128-1805
```

FL 330 9-03

UPS NEXT DAY AIR

TRACKING #: 1Z 361 E83 01 4175 4250

BILLING: P/P

REC'D BY _____ D.C.

NOV 24 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.

REF #1: VN

The UPS Store RFID Label

Tracking #

1Z361E83014175 4250

Serving you for more than 100 years
United Parcel Service.



THE UPS STORE

THE UPS STORE

Express Envelope

THE UPS STORE

Print & Business Services

upsstore.com • theupsstorefranchise.com